IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE<br>    Plaintiff | §<br>§<br>§ | |
| v. | § | Case No. 19-cv-786 |
| | § | |
| MICHAEL SHACKLEFORD<br>    Defendant. | §<br>§<br>§ | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### I.   INTRODUCTION

Plaintiff alleges in his complaint that Defendant made a false arrest and engaged in malicious prosecution with respect to the wrongful arrest of Plaintiff for the third degree felony offense of obstruction or retaliation. Specifically, Plaintiff has alleged that Defendant's affidavit contained information that was false and that Defendant knew to be false; namely that an offense occurred in Denton County, Texas. Plaintiff has also alleged that Defendant materially misled that magistrates in this case by knowingly omitting information concerning the history between Plaintiff and Thomas Christopher Retzlaff ("Retzlaff"), as well as omitting information concerning Retzlaff's criminal history for witness tampering and fabricating physical evidence (among many other offenses).

Implicitly recognizing that its motion is doomed under Rule 9(b), Defendant attempts to use extrinsic evidence in support of its motion under Rule 12(b)(6). Equally telling is that Defendant filed an immediate motion to stay discovery pending the resolution of immunity issues in this case, which begs the question as to specifically what information the Defendant is so desperate to withhold from the Plaintiff. In any case, Plaintiff's

complaint is sufficiently plead to avoid dismissal under Rule 12(b)(6).

## II.   BACKGROUND FACTS

For the Court to adequately understand the dispute between the parties in this case and evaluate the case at bar, it must be aware of certain background information concerning Plaintiff and the "victim" (a term which Plaintiff uses in the loosest possible terms). Plaintiff formerly represented certain victims of an illegal Internet phenomenon commonly known as "revenge pornography" – which typically occurs when a former intimate partner of an individual shares nude or otherwise compromising photographs of that individuals as revenge for a break-up. While representing these clients, Plaintiff was successfully able to shut down several revenge pornography websites including, but not limited to, a website known as "PinkMeth.com". Retzlaff is a revenge pornographer who has previously sexually assaulted, criminally stalked, and posted sexually oriented photographs of his daughter (among others). Since approximately 2014, Retzlaff has launched vicious and illegal stalking campaigns against a number of attorneys, investigators, and other individuals who have been involved in fighting revenge pornography including, but not limited to, Plaintiff, James McGibney, Marc Randazza, Philip Klein, John Morgan, Jay Liederman, Evan Stone, and Kyle Bristow.

In March of 2017, Plaintiff was offered a position as an assistant felony prosecutor with the Victoria County District Attorney's office. This job offer was rescinded, with no explanation provided to Plaintiff, approximately twelve days before Plaintiff was expected to begin his new job. This resulted in significant financial harm and damage to

Plaintiff's professional reputation. Plaintiff responded by suing the Victoria County District Attorney for relief under Rule 202 of the Texas Rules of Civil Procedure. Specifically, Plaintiff asked to be permitted to take the deposition of the elected district attorney so that he would be able to determine who, if anyone, had interfered with his job opportunity so that they could then be sued. This relief was denied.

The patently ridiculous obstruction or retaliation charge that is at the heart of this case is based upon a grievance filed against Plaintiff by Retzlaff with the State Bar of Texas in December of 2017. In that grievance, Retzlaff falsely alleged that Plaintiff "is a violent person suffering from profound mental illness that self-medicates with illegal drugs" and that Plaintiff "said he was going to murder both me and my family". In this same grievance, Retzlaff took responsibility for interfering with Plaintiff's job offer with Victoria County, and furthermore, falsely alleged that Plaintiff has previously posted with the handle "WNLaw" on the notorious "Stormfront" white supremacist blog. Plaintiff had not previously had any contact with Retzlaff and only knew who he was because of litigation involving him and James McGibney that was being handled by local attorney Evan Stone. As Plaintiff was not initially required to respond to the grievance, Plaintiff ignored it.

On or around March 8, 2018, Plaintiff was notified that he was required to respond to the grievance and did so in writing as required by the rules. He took no other action against Retzlaff except to warn him against continuing to defame him on his "BV Files" blog (located at www.viaviewfiles.net). Retzlaff took this warning as an invitation to further stalk Plaintiff and, on or around March 25, 2018, used the alias of "Dean

Anderson" to send threatening communications to Plaintiff employer at the time, Karlseng, LeBlanc, & Rich L.L.C. ("KLR"). Retzlaff also posted pictures of one of Plaintiff's supervisors, Robert Karlseng, on his BV Files blog with the caption "Robert Karlseng – Paymaster to Nazis – Do Not Hire This Man". Additionally, the blog contained a map to KLR's main office and pictures of several other current KLR employees. Both the e-mail and the website falsely accused Plaintiff of being a "white supremacist" and a "Nazi. Plaintiff does not tolerate malicious allegations of this nature from Retzlaff, or for that matter, from anyone else.

Plaintiff's employment with KLR was terminated when Mr. Karlseng learned of the contents of Retzlaff's blog on or around March 27, 2018. It was the war of words between Plaintiff and Retzlaff immediately following the termination of his employment which led to the bar discipline imposed against Plaintiff on February 21, 2019 (not, as defense counsel assumes, the alleged threats which supposedly formed the basis for Plaintiff's wrongful arrest nearly a year later). Plaintiff sued Retzlaff on March 28, 2018 in state court and, not content with the hole he had already dug himself, Retzlaff filed an answer in state court which said "no doubt Van Dyke is also a pedophile – he has that look about them." Almost immediately after filing this document, Retzlaff created a new post on his blog entitled "Texas Nazi Attorney Jason Van Dyke Is Also A Pedophile – Court Records Claim". Plaintiff immediately amended his lawsuit against Retzlaff to include causes of action for defamation *per se*. Unsurprisingly, Retzlaff and his counsel have repeatedly attempted to defraud various courts by claiming that Retzlaff was actually sued for statements that he made during state bar disciplinary or court

proceedings.

Since that filing, Retzlaff continued to stalk Plaintiff and harass his clients. Plaintiff regularly received telephone calls from clients stating that "Dean Anderson" had reached out to them with disturbing information about him. Some fired Plaintiff (then in private practice) after communicating with Retzlaff, others did not. In addition to his electronic mail communications, Retzlaff continued to use his blog to "name and shame" Plaintiff's clients. This would typically involve posting personal photographs of company officers and their children on his blog, publishing maps to their personal residences, and stating that the companies are "big supporters" of "Nazis" and "pedophiles". The proverbial "last straw" came in October of 2018 when Retzlaff published a map to the home of Plaintiff's elderly mother on his blog, published a picture of her, and encouraged the domestic terrorist collective known as "Antifa" to go to her home.

On or around the evening of October 24, 2018, after learning of this blog post by Retzlaff, Plaintiff escorted his mother to the Frisco Police Department for the purpose of filing a report concerning Retzlaff's publication of her private information Knowing both Retzlaff's criminal history and the reputation of Antifa terrorists, Plaintiff also ensured that his mother had a handgun and suitable ammunition to defend herself with in case of an attack. Plaintiff's mother was undergoing chemotherapy of breast cancer at the time this occurred and Plaintiff was naturally infuriated (although not surprised) that even a sociopath like Retzlaff would stoop to the level of attacking an elderly cancer patient. The war of words between Plaintiff and Retzlaff – consisting mostly of vulgar insults and threats of legal repercussions – was immediately escalated.

After he was fired from KLR, Plaintiff's office was located within the offices of one of his clients, White Jacobs & Associates Inc. ("WJA"), in Collin County, Texas. Due to the fact that Retzlaff had interfered with his law practice in the past and was likely to do so in the future, Plaintiff has all mail sent to his home address and used his home address on all pleadings, on all correspondence, and on all court and state bar registries. Plaintiff never actually officed out of his home; the sole purpose of this tactic was to hoodwink Retzlaff. Plaintiff did have access to his business email from his home computer, but rarely utilized it outside of business hours. Plaintiff has no recollection of sending the threatening e-mails allegedly sent to Retzlaff on December 12, 2018. When he learned of their existence, he was able to locate only one outgoing email from him to Retzlaff on that date which – although extremely vulgar in its use of language – was nothing like the e-mails produced by Retzlaff to the Oak Point Police Department. In fact, Plaintiff was not in town for much of December 12, 2018; he was on his way to North Carolina to hunt tundra swans and ducks.

To this day, Plaintiff does not know how Retzlaff obtained the e-mails which ultimately resulted in Plaintiff's arrest. He can only speculate. Plaintiff utilized shared office space at WJA and it is entirely plausible, although unlikely, that another person in that office accessed his workspace without authorization. Plaintiff subsequently learned that an individual who had access to his home – one he thought to be a friend – was providing information concerning Plaintiff directly to Retzlaff. In fact, discovery from the State Bar of Texas revealed that he had offered to provide Retzlaff compromising information concerning Plaintiff on the same date and around the same time as the

alleged threats were sent. As Plaintiff utilized software which allowed him to access his work computer from home in the event of an emergency, it is also possible that those emails were sent by that individual through use of that software (or that his computer was hacked by Retzlaff himself). However, Plaintiff believes that the most likely origin of the supposedly threatening e-mail communications is that they were manufactured by Retzlaff himself.

### III. ARGUMENT

#### A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957) (emphasis added); see also Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp v. Twombly*, 550 U.S. 540, 570 (2007). Dismissal is appropriate only when a Plaintiff has not "alleged enough facts to state a claim that is plausible on its face" and has failed to "raise a right to relief above the speculative level". *Id*. When a government official asserts a qualified immunity defense, the burden is on the Plaintiff to "show that he pleaded sufficient facts showing . . . that the official violated a statutory or constitutional right. If the Plaintiff makes this . . . showing, then [the Court] must determine whether the Defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *United States ex rel. Parikh v. Brown*, 587 F. App'x 123, 127-128 (5th Cir. 2014); *see also Attebury v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 556-57. A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all the factual allegations contained therein. *Id*. Rule 8 does not raise the pleading standard to the level required to survive a motion for summary judgment or to prevail at trial, requiring Plaintiff to actually prove all material issues of its case; instead, Plaintiff need only set forth the particular facts to support his § 1983 claims, which at this stage must be accepted as true, to survive a motion for dismissal the Complaint.

### B. The Nature of Plaintiff's § 1983 Claims

The crux of Plaintiff's complaint is not that he was arrested for a felony offense without a warrant. Plaintiff concedes that Shackleford did, in fact, have a warrant for his arrest. The entire basis for Plaintiff's lawsuit is his allegation that Defendant violated his rights by signing an arrest warrant affidavit that lacked probable cause by recklessly omitting and misstating key facts. The 5th Circuit has previously held that claims like those plead by Plaintiff in this lawsuit are cognization under § 1983. See e.g. *Winfrey v. Rogers*, 882 F.3d 187 (5th Cir. 2018). Furthermore, in *Manuel v. City of Joliet*, the U.S. Supreme Court considered whether a Plaintiff had stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a controlled substance based upon false reports written by a police officer and an evidence technician. 137 S.Ct. 911, 915 (2017). The Supreme Court held that the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove. *Id*.

at 917.

In this case, Plaintiff has plead both false arrest and malicious prosecution. Although Plaintiff concedes that the 5th Circuit has held that there is "no freestanding constitutional right to free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Circ. 2003) (en banc). However, in *Albright v. Oliver*, the U.S. Supreme Court stated that malicious prosecution claims must be based upon the Fourth Amendment, rather than on "the more generalized notion of 'substantive due process,'" because the Fourth Amendment is the explicit textual source against this type of government behavior. 510 U.S. 266, 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In short, whether his Court treats Plaintiff's claim as false arrest or malicious prosecution doesn't matter; Plaintiff has stated a claim upon which relief can be granted.

**C. Defendant Does Not Have Qualified Immunity**

A government officials conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The purpose of qualified immunity is to ensure that, before they are subject to suit,

officers are on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). The dispositive question is 'whether the violative nature of particular conduct is clearly established. *Ashcroft,* 536 U.S. at 742.

In this case, the clearly established constitutional right asserted by Plaintiff is to be free from police arrest without a good faith showing of probable cause. Since *Franks v. Delaware*, it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes "a false statement knowingly or intentionally, or with reckless disregard to the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." 438 U.S. 154, 155-56 (1978). The Supreme Court correctly observed in *Franks* that the warrant requirement is meant "to allow the magistrate to make an independent evaluation of the matter." *Id*. at 165. It requires affiants to "set forth particular facts and circumstances underlying the existence of probable cause, including those that concern the *reliability of the information* and the *credibility of the source* to avoid "deliberately or reckless false statement[s]." *Id*. (emphasis added).

Plaintiff does not allege that Defendant was negligent, as mere negligence will not defeat qualified immunity. Defendant, in his pursuit of Plaintiff's arrest, was reckless. Recklessness requires proof that the defendant "in fact entertained serious doubts as to the truth of the statement." *Hart v. O'Brien,* 127 F.3d 424, 449 (5th Cir. 1997) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)), abrogation on other grounds recognized by *Spivey v. Robertson,* 197 F.3d 772, 775 (5th Cir. 1999). The specific acts

of recklessness are well-plead in Plaintiff's complaint: (1) Defendant recklessly alleged that an offense was committed in Denton County, Texas; and (2) Defendant was reckless in his failure to disclose to the magistrate facts that he knew, or should have known, concerning Retzlaff's credibility and the reliability of the information that he had obtained from Retzlaff. These facts, as plead by Plaintiff, meet the first prong of *Franks* and are legally sufficient to overcome a motion to dismiss under Rule 12(b)(6).

The second prong of the *Franks* test requires this Court to consider whether Plaintiff has alleged sufficient facts to demonstrate that "the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 156. Probable cause has never been held to be a "finely-tuned standard", but rather, it is a fluid concept that depends upon the particular circumstances of a situation. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). As a practical matter, a Court assesses whether an officer has probable cause to make an arrest by examining the circumstances of an arrest and deciding whether the historical facts available to an officer at the time of an arrest amount to probable cause when viewed from the standpoint of an objectively reasonable police officer. *Id*. An arrest based upon an offense committed outside an officer's presence must be based upon information that is at least reasonably trustworthy. When considering the widely reported, well-known, and documented history between Plaintiff and the "victim", no reasonable person – police officer or not – could have concluded that the offense of obstruction or retaliation had been committed; the obstruction and retaliation arrest was procured entirely by a stalker against his victim.

Texas Penal Code § 36.06(a) states that "A person commits an offense if the person

intentionally or knowingly harms or threatens to harm another by an unlawful act: (1) in retaliation for or on account of the service or status of another as a: (A) public servant, witness, prospective witness, or informant; or (B) person who has reported or who the actor knows intends to report the occurrence of a crime; or (2) to prevent or delay the service of another as a (A) public servant, witness, prospective witness, or informant; or (B) person who has reported or who the actor knows intends to report the occurrence of a crime. Defendant, in its motion, makes the mistake of assuming that any type of harm or threat of harm by an individual against another who is a witness, or prospective witness, against them is a violation of this statute. While such conduct may or may not violate other statutes, the plain wording of this statute requires some causal link between the harm or threatened harm and the status of the "victim" at a public servant, witness, prospective witness, or informant. Without this causal link, an obstruction or retaliation case fails. Under Defendant's proposed reading of the statute, a person who punches their spouse's lover could be charged with obstruction or retaliation due to said lover's status as a prospective witness in an imminent divorce proceeding. While an individual engaging in such hypothetical conduct would undoubtedly be guilty of assault, he would not be guilty of obstruction or retaliation.

    In this case, Defendant expects this Court to believe that he had probable cause to make an arrest for obstruction or retaliation where: (a) he knew, or should have known, from his initial contact with the "victim" that any crime which may have been committed had its situs in a different city and a different county; (b) the alleged conduct related to a state bar grievance that was approximately a year old; (c) the "victim" proximately

caused the termination of Plaintiff's employment on two separate occasions during the course of a calendar year; (d) the "victim" had a well-known and well-documented history of stalking Plaintiff, members of Plaintiff's immediate family; and Plaintiff's clients (not to mention a substantial number of other attorneys); and (e) the "victim" had a well-known and well-documented criminal history of tampering with witnesses and falsifying government records. See *Hebron v. Touhy*, 18 F.3d 421, 424 (7th Cir. 1994) (holding that arresting officers should take the witness' past history with the accused into account when determining probable cause); *Spiegel v. City of Chicago*, 920 F. Supp. 891, 898 (N.D. Ill. 1998) (district court determined that officers should have conducted additional investigation beyond a mere witness statement when parties are clearly in animus). It should be noted that, at the time of Plaintiff's arrest, the ongoing feud between Plaintiff and Retzlaff had been the subject of several newspaper stories in the *Denton Record Chronicle*, including one featured on the front page.

All, or substantially all, of Defendant's basis for seeking an arrest warrant was information obtained from Retzlaff. Absent further investigation by the Oak Point Police Department to corroborate the facts recited to them by Retzlaff, no reasonable police officer or magistrate could have found Retzlaff to be a credible complainant. Accordingly, Defendant's failure to duly inform the magistrate of the ongoing year-long dispute between the parties was reckless. See *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (finding a lack of probable cause when a police officer failed to investigate evidence that would have illuminated the circumstances surrounding the alleged crime); *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999) (stating that arresting officers cannot

"turn a blind eye" to exculpatory evidence before them); *Kuehl v. Burtis*, 173 F.3d 646, 649-50 (8th Cir. 1999) (noting that an arresting officer did not take exculpatory eyewitness testimony into account); *Contra Baker v. McCollan*, 443 U.S. 137, 146 (1979) (holding that a police officer is not required to investigate all potentially exculpatory claims before making an arrest).

### D. The Independent Intermediary Doctrine

Defendant further contends that he is not liable to Plaintiff because there were two independent intermediaries that intervened to break the causal chain between his Fourth Amendment violations and Plaintiff's wrongful arrest: (1) the district court judge who signed the arrest warrant; and (2) the magistrate who arraigned Plaintiff. However, under the circumstances presented in this case, Shackleford cannot avail himself of the independent intermediary doctrine.

Under the independent intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011); *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). The 5th Circuit has nevertheless held that the independent intermediary doctrine has a notable exception: the chain of causation between the officer's conduct and the unlawful arrest is broken only where *all of the facts* are presented to the grand jury (or other independent intermediary) where the malicious motive of law enforcement officers does not lead them to withhold any relevant information from the independent intermediary. *Cuadra*, 626 F.3d at 813. In short, a law

enforcement officer cannot claim safe harbor under the independent intermediary doctrine when the intermediary's proceeding is tainted by an officer's unconstitutional conduct. That is precisely what Plaintiff has alleged in this case.

### E. Conclusion

The right of individuals to be free from arrest absent probable cause had been enshrined in our jurisprudence since this nation's inception. The requirement of a warrant for certain seizures of persons, enshrined in both Federal and State jurisprudence, is intended as a check by the judiciary on the power of law enforcement officers to effect arrests. However, both the right to be free from unreasonable seizure (as well as the warrant requirement) are meaningless when officers are permitted to recklessly misstate evidence and withhold material facts from magistrates responsible for making probable cause determinations. Discovery in this case will quickly determine what information Defendant had at the time he executed the arrest warrant affidavit, including information concerning the situs of any offense which may have been committed and ongoing feud between Plaintiff and Retzlaff.

Both the U.S. Supreme Court and the 5th Circuit have allowed claims that are the same, or substantially the same, as those plead by Plaintiff in this case to proceed. Plaintiff's complaint has alleged more than sufficient facts to state a claim that is both plausible on its face and raises raise a right to relief above the speculative level. Plaintiff has also plead facts sufficient to demonstrate that, by recklessly misstating or omitting relevant information on an arrest warrant affidavit, Defendant violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution (regardless of whether they sound

in false arrest or malicious prosecution). Plaintiff's complaint meets both prongs of the *Franks* test and pleads sufficient facts to overcome Defendant's affirmative defense under the independent intermediary doctrine. Defendant's motion should be denied.

## IV.   PRAYER

Plaintiff prays that Defendant's motion to dismiss be denied.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
PO Box 2618
Decatur, TX 76234
P – (940) 305-9242
Email:  jasonleevandyke@protonmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Robert Davis, Attorney for Defendant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE
