**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JASON LEE VAN DYKE,** | § § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Case No.: 4:19-cv-00786-SDJ-KPJ |
| **MICHAEL SHACKLEFORD,** | § § § | |
| **Defendant.** | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Michael Shackleford's Motion to Dismiss (the "Motion") (Dkt. 6), to which Plaintiff filed a response (Dkt. 10), Defendant filed a reply (Dkt. 11), and Plaintiff filed a sur-reply (Dkt. 12).

Upon consideration of the pleadings and relevant law, the Court recommends the Motion be **GRANTED**.

## I. BACKGROUND

On October 24, 2019, Jason Lee Van Dyke ("Plaintiff"), a resident of Texas, filed suit against Oak Point Police Department (the "Department") Chief Michael Shackleford ("Defendant"), asserting claims under 42 U.S.C. § 1983 for "Wrongful Arrest In Violation of the Fourth and Fourteenth Amendments" and "Malicious Prosecution In Violation of the Fourth and Fourteenth Amendments." Dkt. 1 at 5. Plaintiff alleges on or about December 12, 2018, Defendant received an email, which is attached to the Complaint and incorporated by reference therein, from Thomas Christopher Retzlaff ("Retzlaff"), alleging, among other things, Plaintiff "just sent me the attached emails saying he is going to murder me." Dkt. 1-1 at 2. The attached emails stated:

1

>I promise you this, motherfucker: if my law career dies, you die with it.
>
>….
>
>Go fuck yourself and what's left of your miserable life. You have destroyed my life, and for that offense, you will pay with your own. That's not a threat. That's a PROMISE motherfucker.

Dkt. 6-3, 6-4. Both of the emails include the electronic business card information for Plaintiff and The Van Dyke Law Firm, P.L.L.C., with an address in Crossroads, Texas, and reflect they were sent by Plaintiff. *See id*. In his email to Defendant, Retzlaff also stated that he is "a witness against [Plaintiff] in a disciplinary proceeding initiated by the State Bar of Texas, which is set to go to trial February 22." Dkt. 1-1 at 2. Retzlaff further stated that he was "being sued by [Plaintiff] in federal court for $100 million." *Id*.[1]

On December 13, 2018, Defendant responded to Retzlaff by email, thanking him for the information and stating, in part, "After reviewing both the email and attachments you sent, our department is limited in this due to jurisdictional issues. As you mentioned the email header information you sent regarding the origin of the emails references Plano, Texas, a city over 30 miles from Oak Point." Dkt. 1-2 at 2. Defendant further requested that Retzlaff "continue to send us whatever you think may be relevant to our citizens and employees safety." *Id*. Plaintiff alleges that Retzlaff corresponded with Defendant on several occasions from late 2018 to early 2019. *See* Dkt. 1 at 3.

On January 11, 2019, Defendant completed a probable cause affidavit for the arrest of Plaintiff for the felony offense of obstruction or retaliation under Texas Penal Code Section 36.06, which is attached to the Complaint and incorporated therein. *See* Dkt. 1-4. Plaintiff alleges the affidavit was "perjured" because it identified the offense as having originated in Denton County

---

[1] *See Van Dyke v. Retzlaff*, No. 4:18-cv-247. Plaintiff and Retzlaff are also involved in disbarment proceedings against Plaintiff. *See In re: Jason Lee Van Dyke*, No: 6:20-mc-009-JDK.

rather than Collin County, and was "materially misleading" because it failed to include information Plaintiff contends was relevant to Retzlaff's credibility ("namely that Retzlaff has been convicted of multiple felonies in Texas (including falsification of a government record and witness tampering), that he had his parental rights to his children terminated due to credible allegations of pedophilia, and the existence of an ongoing feud between Retzlaff and Plaintiff since March of 2017."). Dkt. 1 at 4. Plaintiff contends the affidavit was submitted at the insistence of Retzlaff. *See id.* at 4.

A Warrant of Arrest (the "Warrant") (Dkt. 1-4) was issued on January 11, 2019, for Plaintiff on the charge of obstruction or retaliation in violation of Texas Penal Code Section 36.06. *See* Dkt. 1-4 at 2. According to the affidavit prepared by Defendant and attached to the Warrant,

> On January 10, 2019, [Defendant] reviewed a sworn Affidavit provided by Tom Retzlaff. The Affidavit contained two supporting emails.
>
> [Plaintiff] is an attorney licensed to practice law in the State of Texas. Tom Retzlaff filed a grievance against [Plaintiff] with the State Bar of Texas in December 2017. Accordingly Tom Retzlaff is a witness or prospective witness in a case scheduled to go before the Texas State Bar regarding [Plaintiff's] law license. . . .
>
> Tom Retzlaff received two threatening emails from [Plaintiff] on December 12, 2018. The two email attachments according to Tom Retzlaff were true and correct copies sent from [Plaintiff] to him.

Dkt. 1-4 at 3. The affidavit went on to cite the content of the two emails attached, which is set forth above. Dkt. 6-3, 6-4.

The Warrant includes a statement that the Honorable Bruce McFarling, 362nd Judicial District Court Judge, examined the above affidavit and determined that probable cause existed for the issuance of an arrest warrant for Plaintiff. *See id.* at 4. Plaintiff was served with the warrant on January 11, 2019, having already been incarcerated in the Denton County Jail for an alias capias warrant issued in different criminal case against Plaintiff. *See* Dkt. 6 at 2. Following Plaintiff's

arrest, Magistrate Judge Robin Ramsay signed Defendant's Acknowledgement of Alleged Offenses, Rights and Bonds, which states that he reviewed the "appropriate documentation" and found that probable cause existed as to each of the charges supported by a confirmed warrant.[2]

Plaintiff alleges his case was subsequently no-billed on September 26, 2019. *See* Dkt. 1 at 4. Plaintiff further alleges that due to Defendant's conduct, he has experienced injuries including, but not limited to, "loss of constitutional and federal rights, severe emotional distress, severe damage to personal and professional reputation, and ongoing emotional distress and professional damages resulting from Plaintiff having a wrongful felony arrest as a part of his criminal history." Dkt. 1 at 5.

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion, the Court must assume all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). To be plausible, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's obligation to provide the grounds of his entitled-to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

---

[2] The Court takes judicial notice of Defendant's Acknowledgement of Alleged Offenses, Rights and Bonds signed by Plaintiff on January 11, 2019. *See* Dkt. 6-7.

4

incorporated into the complaint by reference. . . . " *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). The emails, warrant, and other records considered in this Report and Recommendation were either attached to the Complaint as exhibits, judicially noticed public records, or referenced in the Complaint and provided by Defendant.

### III. ANALYSIS

#### A. MALICIOUS PROSECUTION

Defendant contends Plaintiff's claim for "malicious prosecution" must be dismissed as it is not, standing alone, a violation of the United States Constitution, and to proceed under Section 1983, a claim must arise under a denial of rights under federal rather than state law. *See* Dkt. 6 at 24. This is, indeed, the state of the law. *See Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). Plaintiff concedes there is "no freestanding constitutional right" to be "free from malicious prosecution." Dkt. 10 at 9 (quoting *Castellano*, 352 F.3d at 945). Plaintiff merely contends that it makes no difference if the Court treats the malicious prosecution claim as a claim for false arrest. *See* Dkt. 10 at 9. The Court recommends, therefore, that Plaintiff's malicious prosecution claim be dismissed.

#### B. FALSE ARREST

Defendant argues Plaintiff has failed to plead a plausible false arrest claim. *See* Dkt. 7 at 16. The Fifth Circuit has stated that under the "independent intermediary doctrine," "an officer who acted with malice in procuring the warrant or the indictment will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v.*

*Gonzales*, 670 F.2d 522, 536 (5th Cir. 1982)). Defendant argues the causal chain was broken in this matter two different times: first, when a judge determined probable cause existed for Plaintiff's arrest; and second, when another judge confirmed the existence of probable cause. *See* Dkt. 7 at 16. Defendant cites the decisions of Judge McFarling and Judge Ramsay, each finding probable cause. *See* Dkt. 1-4; Dkt. 6-7.

Though Plaintiff's case was ultimately no-billed, the independent intermediary doctrine applies "even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 2016 WL 3085528, at *3 (5th Cir. 2016). "An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand*, 838 F.2d at 1427–28. A plaintiff must allege such a "taint" and "other facts supporting the inference" of such taint existed. *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017). The "chain of causation is broken only where all the facts are presented to the [impartial intermediary], where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information or other independent intermediary from the independent intermediary." *Hand*, 838 F.2d at 1428.

Plaintiff contends the intermediaries' proceedings were tainted by Defendant's "unconstitutional conduct." *See* Dkt. 10 at 15. Plaintiff does not specify the unconstitutional conduct; rather, Plaintiff merely argues the unconstitutional conduct is "precisely what Plaintiff has alleged in this case." Dkt. 10 at 15. Plaintiff also does not present any facts supporting an inference of taint.

Plaintiff appears to suggest the proceedings were tainted because "all of the facts" were not presented to the intermediaries. *See* Dkt. 10 at 14.[3] However, the Fifth Circuit in *Hand* held this issue concerns whether the defendant is alleged to have withheld any *relevant* information. *See Hand*, 838 F.2d at 1428. Plaintiff has alleged Defendant withheld information from the independent intermediaries, specifically "that Retzlaff has been convicted of multiple felonies in Texas (including falsification of a government record and witness tampering), that he had his parental rights to his children terminated due to credible allegations of pedophilia, and the existence of an ongoing feud between Retzlaff and Plaintiff since March of 2017." Dkt. 1 at 4. Plaintiff also alleges the affidavit in support of the Warrant contained the false statement that the offense occurred in Denton County. *See* Dkt. 1 at 6.

Both parties cite, as bearing on the issue of taint, the Fifth Circuit's decision in *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). *See* Dkt. 10 at 14; Dkt. 11 at 7. In *Cuadra*, the Fifth Circuit considered whether a plaintiff, indicted by two separate grand juries, could substantiate a false arrest claim. *See Cuadra*, 626 F.3d at 813. The plaintiff made allegations that the grand jury decisions were tainted, but the Fifth Circuit found that "mere allegations of 'taint,' without more, are insufficient to overcome summary judgment." 626 F.3d at 813. Notably, the plaintiff judicially admitted that he had changed government records, and the Fifth Circuit held the plaintiff's admission was sufficient, on its own, to establish probable cause. *See id*.

The present Motion is a motion to dismiss—not a motion for summary judgment; hence, the Court must take Plaintiff's allegations as true. However, there are no allegations that due to

---

[3] Plaintiff does not apply case law or present a specific argument on this issue. Rather, Plaintiff merely states that in the 5th Circuit, "the chain of causation between the officer's conduct and the unlawful arrest is broken only where *all of the facts* are presented to the grand jury (or other independent intermediary) where the malicious motive of law enforcement officers does not lead them to withhold any relevant information from the independent intermediary." Dkt. 10 at 14. The Court generously interprets Plaintiff's italicization of the phrase "all of the facts" as an indication that Plaintiff wishes to assert Defendant did not present all of the facts.

7

Defendant's actions the causal chain remained intact. Further, as in *Cuadara*, the Court finds that information in the Warrant alone constituted probable cause, and the mere generalized allegation of "taint," with no explanation as to how additional information would have been relevant to a finding of probable cause, is of no moment.

With regard to the information Defendant "withheld," Plaintiff's allegation that the location of the offense was incorrect does not bear on the issue of probable cause. The independent intermediaries found probable cause for a violation of Tex. Penal Code Section 36.06, which does not require the location of the crime be a particular county. *See* TEX. PENAL CODE § 36.06. The Texas retaliation statute provides, "A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act . . . in retaliation for or on account of the service or status of another as a . . . public servant. . . ." TEX. PENAL CODE § 36.06(a)(1)(A). "A threat itself is sufficient to violate the statute, whether or not there is any accompanying action." *Foster v. Director, TDCJ-CID*, No. 1:04-CV-783, 2008 WL 783411, at *5 (E.D. Tex. Mar. 20, 2008).

Moreover, additional information regarding the ongoing feud between Retzlaff and Plaintiff arguably *increases* the showing of probable cause, as it suggests the threatening communications were not random, impersonal, or incidental.

Plaintiff, thus, does not explain how more information regarding Retzlaff bears on the issue of probable cause. The independent intermediaries found probable cause not on the reliability, honesty, or character of Retzlaff, but on the allegation that Retzlaff was a witness or prospective witness in a case before the Texas State Bar regarding a grievance against Plaintiff and the very content of two emails, which appeared to have been sent by Plaintiff to Retzlaff. *See* Dkt. 1-4; Dkt. 6-7. The cited emails show that Plaintiff told Retzlaff "I promise you this motherfucker: If

my law career dies, you die with it," and "Go fuck yourself and what's left of your miserable life. You have destroyed my life, and for that offense, you will pay with your own. That's not a threat. That's a PROMISE motherfucker." Dkt. 1-4 at 3–4.[4]

With the specific information cited by Plaintiff, the independent intermediaries would still have been presented with evidence of death threats made against a witness. Probable cause exists under such circumstances. *See Archuleta v. State*, No. 05-96-01880-CR, 1998 WL 122419, at *2 (Tex.App.—Dallas, Mar. 20, 1998, pet. ref'd) (complainant testimony of threats in violation of Section 36.06 were sufficient to support a retaliation case, even when challenged as vindictive and untruthful; the credibility of the complainant was an issue for the finder of fact). Thus, the independent intermediary doctrine applies, the process was not tainted by withholding of relevant information, and therefore Plaintiff has not alleged an adequate claim for false arrest.

### C. QUALIFIED IMMUNITY

Additionally, Defendant argues he is entitled to qualified immunity. *See* Dkt. 6 at 25–30. Qualified immunity protects government officials against claims in their individual capacities to the extent their conduct does not violate clearly established statutory or constitutional rights. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016); *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir.), *reh'g denied*, 801 F.3d 494 (2015). The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). Qualified immunity provides the right not to

---

[4] Plaintiff states that he "has no recollection of sending the threatening e-mails." Dkt. 10 at 6. In the surreply Plaintiff argues he is not conceding that he sent the threatening emails. *See* Dkt. 12 at 4. Plaintiff does not actually deny sending the emails, but states a belief that Retzlaff was "the most likely origin of the supposedly threatening" emails. Dkt. 10 at 7.

9

stand trial or confront other burdens of litigation, "conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Davis*, 406 F.3d at 380 (internal citation omitted). Qualified immunity is more than a mere defense to liability; the doctrine provides immunity from suit. *See id.*

The Fifth Circuit has reasoned that before a district court adjudicates the merits of a plaintiff's claim, the plaintiff must overcome the bar of qualified immunity. *See id*. Once the issue of qualified immunity is raised, a plaintiff has the burden of rebutting the defense by demonstrating the government official's allegedly wrongful conduct violated clearly established law. *See id*. The government official is not required to demonstrate that he did not violate clearly established federal rights because Fifth Circuit precedent places such burden upon the plaintiff. *See id*. "Qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id*. The qualified immunity shield is broad and protects actions—even mistakes— that are reasonable under the existing law. *See Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992).

The Court conducts a two-prong inquiry in order to determine whether qualified immunity applies. In order to defeat qualified immunity, a plaintiff must sufficiently allege: (1) a constitutional right would have been violated on the facts shown; and (2) "the right was clearly established" at the time of the violation. *See Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995); *Siegert v. Gilley*, 500 U.S. 226 (1991). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court instructed that the inquiries for constitutional violations and qualified immunity remain distinct. *Johnson v. Waters*, 317 F. Supp. 2d 726, 731 (E.D. Tex. 2004), dismissed, 120 F. App'x 555 (5th Cir. 2005) (citing *Saucier*, 533 U.S. at 201).

The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[ ] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[ ] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Fraire*, 957 F.2d at 1273.

When the defense of qualified immunity is raised in a motion to dismiss, the complaint is subjected to a heightened pleading requirement. *Baker*, 75 F.3d at 195. The complaint must state specific conduct and actions that give rise to a constitutional violation. *Id*. Conclusory allegations and assertions will not suffice. *Id*. Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted).

Plaintiff fails to identify any factual basis on which a jury could find that Defendant violated his constitutional rights or that any of Defendant's conduct was objectively unreasonable. Plaintiff has not identified a single existing precedent which demonstrates Defendant's alleged conduct constitutes a constitutional violation. *See, e.g., Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Plaintiff has presented no caselaw or statute suggesting Defendant's listing of Denton County as the location of the conduct in the affidavit was conduct that every reasonable officer would understand was a violation of the law, nor any caselaw or statute indicating every reasonable officer would understand that discussion of Retzlaff's alleged criminal history, character, and

history of conflict with Plaintiff was required by law in an affidavit in support of a warrant for arrest. For this reason alone, the Court would recommend that Plaintiff's claims be dismissed.

### IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendant Michael Shackleford's Motion to Dismiss (Dkt. 6) be **GRANTED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 1st day of September, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE